### IN THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ZIILABS INC., LTD., | |
| Plaintiff, | **COMPLAINT** |
| v. | Civil Action No. _____ |
| NVIDIA CORPORATION, | **JURY TRIAL DEMANDED** |
| Defendant. | |

### COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff ZiiLabs Inc., Ltd. ("ZiiLabs" or "Plaintiff") hereby submits its Complaint for Patent Infringement against Defendant Nvidia Corporation ("Nvidia" or "Defendant") and alleges as follows:

### NATURE OF ACTION

1.       This is an action for patent infringement under the patent laws of the United States, 35 U.S.C. §§ 271, *et seq.*, to obtain damages resulting from Defendant's unauthorized and ongoing actions, in the state of Delaware and elsewhere, of making, having made, using, selling, having sold, offering to sell, importing and/or having imported into the United States, graphics cards, graphics processing units ("GPUs"), and GPU designs, and products containing the same, that infringe or enable the practice of one or more claims of ZiiLabs's United States Patent Nos. United States Patent No. 6,181,355 (the "'355 Patent"), United States Patent No. 6,900,800 (the "'800 Patent"), United States Patent No. 8,144,156 (the "'156 Patent"), and United States Patent No. 8,643,659 (the "'659 Patent") (individually or collectively, the "Asserted Patent(s)").

2.       This is an action for direct infringement.  Upon information and belief, Defendant makes, has made, uses, sells, has sold, offers to sell, imports, and/or has imported into the United

States certain graphics cards, GPUs, and GPU designs, and products containing the same, that infringe or enable the practice of one or more claims of the Asserted Patents, either literally or under the doctrine of equivalents.

3.      In addition, this is an action for indirect infringement.  Upon information and belief, Defendant contributes to and/or induces the direct infringement, either literally or under the doctrine of equivalents, of one or more claims of the Asserted Patents.

4.      ZiiLabs asserts that Defendant directly or indirectly infringes at least the following claims:

| Asserted Patent | Asserted Claims |
|---|---|
| '355 | 1-18 |
| '800 | 1-3, 6-9, 11-19 |
| '156 | 1-20 |
| '659 | 1-20 |

5.      ZiiLabs asserts that any and all of Defendant's graphics cards, GPUs, and GPU designs implementing Defendant's Fermi, Kepler, Maxwell, Pascal, and Volta architectures, and products containing the same, and any other products that operate similarly (the "Accused Products") infringe or are used to infringe, directly and/or indirectly, the Asserted Claims of the Asserted Patents.

**THE PARTIES**

A.      **Plaintiff ZiiLabs**

6.      Plaintiff ZiiLabs is a Bermuda corporation with its registered office at Clarendon House, 2 Church Street, Hamilton, HM11 Bermuda.

7.      ZiiLabs is a wholly-owned subsidiary of Creative Technology Asia Limited ("CTA"), a Hong Kong company.  CTA is a wholly-owned subsidiary of Creative Technology Ltd. ("Creative"), a publicly traded Singapore company.

8.      ZiiLabs is the assignee and owner of the Asserted Patents.

9.      ZiiLabs traces its roots to a company called benchMark Technologies (BMT), founded in 1983.  In 1988, BMT was sold to DuPont, which renamed BMT as Dupont Pixel.  In 1994, one of the founders of BMT led a management buyout of DuPont Pixel, and formed 3DLabs Inc. Ltd. ("3DLabs").

10.      At the time of its formation, 3DLabs focused on the creation of a 3D graphics chip for personal computers ("PCs") and was an early pioneer in the graphics processing industry.  3DLabs was a leading supplier of high-performance integrated hardware and software graphics accelerator solutions for 2D and 3D professional graphics applications.  It was a pioneer in bringing 3D graphics to personal computers and its products were used in professional graphics applications for PCs and Windows NT-based PC workstations.

11.      3DLabs introduced the GLINT 300SX, the world's first merchant OpenGL[1] graphics processing unit ("GPU"), in 1995.

12.      In 1996 3DLabs launched the Permedia GPU, a full featured, lower cost 3D graphics processor designed to provide high performance interactive 3D graphics for mainstream consumer PCs using the Windows 95 operating system.

---

[1] "OpenGL is the premier environment for developing portable, interactive 2D and 3D graphics applications.  Since its introduction in 1992, OpenGL has become the industry's most widely used and supported 2D and 3D graphics application programming interface (API), bringing thousands of applications to a wide variety of computer platforms." (*See* https://www.opengl.org/about/.)  3DLabs was a founding member of the Khronos Group, which drives the OpenGL standard, and initiated the OpenGL ES 1.0 standard, which was ratified in 2003.

13.     3DLabs' GPUs were designed into board and system level designs by companies such as Accel Graphics, Inc., Creative, Diamond Multimedia Systems Inc., ELSA, Inc., Fujitsu Ltd., Leadtek, and NEC Corp., and boards incorporating 3DLabs' GPUs were designed into PCs by such heavyweights as Compaq Computer Corporation, Dell Computer Corporation, Gateway 2000, Hewlett-Packard Company, Micron Electronics, Inc., NEC, and Samsung Electronics Co., Ltd.

14.     From its inception, 3DLabs marketed and sold its 3D graphics technology through merchant processor sales primarily to PC and graphics board original equipment manufacturers ("OEMs") and licensed its embeddable graphics processor cores to technology partners in exchange for royalties.  In July of 1998, 3DLabs acquired Dynamic Pictures Inc., then a leading supplier of 2D/3D graphics boards for high-end PC graphics applications in the Windows NT-based PC workstation market, as part of 3DLabs' strategic decision to enter the vertically integrated board business for the PC workstations market.

15.     In 2002, 3DLabs was acquired by Creative, one of 3DLabs' original investors.

16.     In January of 2009, 3DLabs was rebranded as ZiiLabs, in part to signify a broadened focus on mobile processors, platforms, and software.  ZiiLabs began providing media processors, including those based on ZiiLabs's StemCell architecture, for use in portable consumer electronics products.

17.     In November of 2012, Intel acquired certain engineering resources and assets related to the U.K. subsidiary of ZiiLabs as well as a license to ZiiLabs' patent portfolio.

**B.     Defendant Nvidia Corporation**

18.     On information and belief, Defendant Nvidia is a Delaware corporation with a principal place of business at 2701 San Tomas Expressway, Santa Clara, California 95050.

Defendant may be served through its registered agent for service of process – Corporation Service Company, 251 Little Falls Drive, Wilmington, DE 19808.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338 because this action arises under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq*.

20.     Upon information and belief, Defendant is subject to personal jurisdiction in the District of Delaware at least because: (i) Defendant is incorporated in Delaware; (ii) Defendant has committed, and is committing, acts of infringement in Delaware; and (iii) Defendant regularly does or solicits business, engages in other persistent courses of conduct, and/or derives substantial revenue from goods and services provided in Delaware.

21.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(c) and 1400(b).

## COUNT I
## (INFRINGEMENT OF U.S. PATENT NO. 6,181,355)

22.     ZiiLabs re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

23.     On January 30, 2001, United States Patent No. 6,181,355 was duly and legally issued for inventions entitled "Graphics Processing with Transcendental Function Generator." The '355 Patent is in full force and effect.  A true and correct copy of the '355 Patent is attached hereto as Exhibit 1 and made part hereof.

24.     ZiiLabs is the assignee and owner of the '355 Patent with the exclusive right to enforce the '355 Patent against Defendant and the exclusive right to collect damages from Defendant for infringement of the '355 Patent for all relevant times, including the right to prosecute this action.

25.     On information and belief, Defendant – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '355 Patent either literally and/or under the doctrine of equivalents, without authority, consent, right, or license, by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

26.     As shown in the claim chart attached hereto as Exhibit 2, the Accused Products practice, or enable the practice of, all elements of at least Asserted Claim 7 of the '355 Patent. Exhibit 7 is representative of the manner of infringement of all of Defendant's Accused Products.

27.     On information and belief, Defendant – without authority, consent, right, or license – is also indirectly infringing and/or has indirectly infringed, at least one claim of the '355 Patent.

28.     Defendant had knowledge of the '355 Patent and ZiiLabs's allegations of infringement at least as of August 7, 2013, when Defendant received actual notice of the '355 Patent via a notice letter from ZiiLabs.  (*See* Exhibit 3.)

29.     Despite Defendant's knowledge of the '355 Patent and ZiiLabs's allegations, Defendant has knowingly and actively induced others to infringe the '355 Patent by acts including, but not limited to, selling the Accused Products, marketing the infringing capabilities of the Accused Products, and providing, or making available, instructions, technical support, and/or other encouragement for the use of such products.  (*See, e.g.,* Exhibits 4-9.)  For example, the GeForce GTX User Guides specify the minimum system requirements for the host system in which the GeForce GTX graphics cards were designed to be incorporated, and they provide

installation instruction to the user.  (*See, e.g.,* Exhibit 6 at 2 and 4-9[2]; *see also* Exhibit 5.)

Similarly, the Nvidia Shield User Guide instructs a user on how to setup and use the device.

(*See, e.g.,* Exhibit 8.)  The Accused Products are pre-programmed to function in the manner

claimed in the '355 Patent.  On information and belief, at least one customer has directly

infringed one or more claims of the '355 Patent.

30.     Defendant has provided and continues to provide the Accused Products, which

cannot and do not operate except in a manner that infringes the '355 Patent.  As shown in the

representative claim chart (Exhibit 2), the Accused Products function in a manner that infringes

or enables infringement of one of more claims of the '355 Patent.  At least by providing

customers with Accused Products, with the intent that the customer will use the Accused

Products in an infringing manner, Defendant has induced and is actively inducing infringement

of at least one claim of the '355 Patent.

31.     Further, upon information and belief, Defendant also indirectly infringes and/or

has indirectly infringed at least one of the claims of the '355 Patent by contributing to

infringement.

32.     The Accused Products are made solely for the purpose of operating in a manner

that infringes at least one claim of the '355 Patent.  Further, the Accused Products are

specifically made and/or specifically adapted for use in the infringement of the '355 Patent, are

not staple commodities of commerce, and are not suitable for substantial non-infringing use.  By

providing these Accused Products, Defendant has contributed to the infringement of the '355

Patent by end-users – for example, customers – who use the Accused Products.

---

[2] Ex. 6 is a copy of the Quick Start Guide distributed in box with the Nvidia GeForce GTX 1080.

33.     Further, Defendant's infringement of the '355 Patent is willful.  Defendant had knowledge of the '355 Patent at least as of August 7, 2013, when ZiiLabs sent Defendant a notice letter identifying that patent.  (*See* Exhibit 3.)  Despite actual notice for over four years, Defendant was objectively reckless, and acted despite an objectively high likelihood that its actions constituted infringement of the valid '355 Patent, in continuing to make, use, sell, offer for sale, and import its Accused Products.

34.     As a result of Defendant's infringing conduct, ZiiLabs has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

35.     The acts of infringement by Defendant have been deliberate and willful, and have damaged ZiiLabs, and Ziilabs is entitled to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II
### (INFRINGEMENT OF U.S. PATENT NO. 6,900,800)

36.     ZiiLabs re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

37.     On May 31, 2005, United States Patent No. 6,900,800 was duly and legally issued for inventions entitled "Tile Relative Origin for Plane Equations."  The '800 Patent is in full force and effect.  A true and correct copy of the '800 Patent is attached hereto as Exhibit 10 and made part hereof.

38.     ZiiLabs is the assignee and owner of the '800 Patent with the exclusive right to enforce the '800 Patent against Defendant and the exclusive right to collect damages from Defendant for infringement of the '800 Patent for all relevant times, including the right to prosecute this action.

39.     On information and belief, Defendant – without authority, consent, right, or license – directly infringes, and has directly infringed,  one or more claims of the '800 Patent either literally and/or under the doctrine of equivalents, without authority, consent, right, or license, by making, using, offering to sell, or selling within the United States, or importing into the United States, the Accused Products.

40.     As shown in the claim chart attached hereto as Exhibit 11, the Accused Products practice, or enable the practice of, all elements of at least Asserted Claim 1 of the '800 Patent. Exhibit 11 is representative of the manner of infringement of all of Defendant's Accused Products.

41.     On information and belief, Defendant – without authority, consent, right, or license – is also indirectly infringing and/or has indirectly infringed, at least one claim of the '800 Patent.

42.     Defendant had knowledge of the '800 Patent and ZiiLabs's allegations of infringement at least as of August 7, 2013, when Defendant received actual notice of the '800 Patent via a notice letter from ZiiLabs.  (*See* Exhibit 3.)

43.     Despite Defendant's knowledge of the'800 Patent and ZiiLabs's allegations, Defendant has knowingly and actively induced others to infringe the '800 Patent by acts including, but not limited to, selling the Accused Products, marketing the infringing capabilities of the Accused Products, and providing, or making available, instructions, technical support, and/or other encouragement for the use of such products.  (*See, e.g.,* Exhibits 4-9.)  For example, the GeForce GTX User Guides specify the minimum system requirements for the host system in which the GeForce GTX graphics cards were designed to be incorporated, and they provide installation instruction to the user.  (*See, e.g.,* Exhibit 6 at 2 and 4-9; *see also* Exhibit 5.)

9

Similarly, the Nvidia Shield User Guide instructs a user on how to setup and use the device. (*See, e.g.,* Exhibit 8.)  The Accused Products are pre-programmed to function in the manner claimed in the '800 Patent.  On information and belief, at least one customer has directly infringed one or more claims of the '800 Patent.

44.     Defendant has provided and continues to provide the Accused Products, which cannot and do not operate except in a manner that infringes the '800 Patent.  As shown in the representative claim chart (Exhibit 11), the Accused Products function in a manner that infringes or enables infringement of one of more claims of the '800 Patent.  At least by providing customers with Accused Products, with the intent that the customer will use the Accused Products in an infringing manner, Defendant has induced and is actively inducing infringement of at least one claim of the '800 Patent.

45.     Further, upon information and belief, Defendant also indirectly infringes and/or has indirectly infringed at least one of the claims of the '800 Patent by contributing to infringement.

46.     The Accused Products are made solely for the purpose of operating in a manner that infringes at least one claim of the '800 Patent.  Further, the Accused Products are specifically made and/or specifically adapted for use in the infringement of the '800 Patent, are not staple commodities of commerce, and are not suitable for substantial non-infringing use.  By providing these Accused Products, Defendant has contributed to the infringement of the '800 Patent by end-users – for example, customers – who use the Accused Products.

47.     Further, Defendant's infringement of the '800 Patent is willful.  Defendant had knowledge of the '800 Patent at least as of August 7, 2013, when ZiiLabs sent Defendant a notice letter identifying that patent.  (*See* Exhibit 3.)  Despite actual notice for over four years,

Defendant was objectively reckless, and acted despite an objectively high likelihood that its actions constituted infringement of the valid '800 Patent, in continuing to make, use, sell, offer for sale, and import its Accused Products.

48.     As a result of Defendant's infringing conduct, ZiiLabs has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

49.     The acts of infringement by Defendant have been deliberate and willful, and have damaged ZiiLabs, and Ziilabs is entitled to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III
## (INFRINGEMENT OF U.S. PATENT NO. 8,144,156)

50.     ZiiLabs re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

51.     On March 27, 2012, United States Patent No. 8,144,156 was duly and legally issued for inventions entitled "Sequencer with Async SIMD Array."  The '156 Patent is in full force and effect.  A true and correct copy of the '156 Patent is attached hereto as Exhibit 12 and made part hereof.

52.     ZiiLabs is the assignee and owner of the '156 Patent with the exclusive right to enforce the '156 Patent against Defendant and the exclusive right to collect damages from Defendant for infringement of the '156 Patent for all relevant times, including the right to prosecute this action.

53.     On information and belief, Defendant – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '156 Patent either literally and/or under the doctrine of equivalents, without authority, consent, right, or

license, by making, using, offering to sell, or selling within the United States, or importing into

the United States, the Accused Products.

54.     As shown in the claim chart attached hereto as Exhibit 13, the Accused Products

practice, or enable the practice of, all elements of at least Asserted Claim 1 of the '156 Patent.

Exhibit 13 is representative of the manner of infringement of all of Defendant's Accused

Products.

55.     On information and belief, Defendant – without authority, consent, right, or

license – is also indirectly infringing and/or has indirectly infringed, at least one claim of the

'156 Patent.

56.     Defendant had knowledge of the '156 Patent and ZiiLabs's allegations of

infringement at least as of August 7, 2013, when Defendant received actual notice of the '156

Patent via a notice letter from ZiiLabs.  (*See* Exhibit 3.)

57.     Despite Defendant's knowledge of the '156 Patent and ZiiLabs's allegations,

Defendant has knowingly and actively induced others to infringe the '156 Patent by acts

including, but not limited to, selling the Accused Products, marketing the infringing capabilities

of the Accused Products, and providing, or making available, instructions, technical support,

and/or other encouragement for the use of such products.  (*See, e.g.,* Exhibits 4-9.)  For example,

the GeForce GTX User Guides specify the minimum system requirements for the host system in

which the GeForce GTX graphics cards were designed to be incorporated, and they provide

installation instruction to the user.  (*See, e.g.,* Exhibit 6 at 2 and 4-9; *see also* Exhibit 5.)

Similarly, the Nvidia Shield User Guide instructs a user on how to setup and use the device.

(*See, e.g.,* Exhibit 8.)  The Accused Products are pre-programmed to function in the manner

claimed in the '156 Patent. On information and belief, at least one customer has directly infringed one or more claims of the '156 Patent.

58.     Defendant has provided and continues to provide the Accused Products, which cannot and do not operate except in a manner that infringes the '156 Patent. As shown in the representative claim chart (Exhibit 13), the Accused Products function in a manner that infringes or enables infringement of one of more claims of the '156 Patent. At least by providing customers with Accused Products, with the intent that the customer will use the Accused Products in an infringing manner, Defendant has induced and is actively inducing infringement of at least one claim of the '156 Patent.

59.     Further, upon information and belief, Defendant also indirectly infringes and/or has indirectly infringed at least one of the claims of the '156 Patent by contributing to infringement.

60.     The Accused Products are made solely for the purpose of operating in a manner that infringes at least one claim of the '156 Patent. Further, the Accused Products are specifically made and/or specifically adapted for use in the infringement of the '156 Patent, are not staple commodities of commerce, and are not suitable for substantial non-infringing use. By providing these Accused Products, Defendant has contributed to the infringement of the '156 Patent by end-users – for example, customers – who use the Accused Products.

61.     Further, Defendant's infringement of the '156 Patent is willful. Defendant had knowledge of the '156 Patent at least as of August 7, 2013, when ZiiLabs sent Defendant a notice letter identifying that patent. (*See* Exhibit 3.) Despite actual notice for over four years, Defendant was objectively reckless, and acted despite an objectively high likelihood that its

actions constituted infringement of the valid '156 Patent, in continuing to make, use, sell, offer for sale, and import its Accused Products.

62.     As a result of Defendant's infringing conduct, ZiiLabs has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

63.     The acts of infringement by Defendant have been deliberate and willful, and have damaged ZiiLabs, and Ziilabs is entitled to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

### COUNT IV
### (INFRINGEMENT OF U.S. PATENT NO. 8,643,659)

64.     ZiiLabs re-alleges and incorporates by reference the allegations in the foregoing paragraphs as if fully set forth herein.

65.     On February 4, 2014, United States Patent No. 8,643,659 was duly and legally issued for inventions entitled "Shader with Global and Instruction Caches."  The '659 Patent is in full force and effect.  A true and correct copy of the '659 Patent is attached hereto as Exhibit 14 and made part hereof.

66.     ZiiLabs is the assignee and owner of the '659 Patent with the exclusive right to enforce the '659 Patent against Defendant and the exclusive right to collect damages from Defendant for infringement of the '659 Patent for all relevant times, including the right to prosecute this action.

67.     On information and belief, Defendant – without authority, consent, right, or license – directly infringes, and has directly infringed, one or more claims of the '659 Patent either literally and/or under the doctrine of equivalents, without authority, consent, right, or

license, by making, using, offering to sell, or selling within the United States, or importing into

the United States, the Accused Products.

68.     As shown in the claim chart attached hereto as Exhibit 15, the Accused Products

practice, or enable the practice of, all elements of at least Asserted Claim 1 of the '659 Patent.

Exhibit 15 is representative of the manner of infringement of all of Defendant's Accused

Products.

69.     On information and belief, Defendant – without authority, consent, right, or

license – is also indirectly infringing and/or has indirectly infringed, at least one claim of the

'659 Patent.

70.     Defendant had knowledge of the '659 Patent and ZiiLabs's allegations of

infringement at least as of November 2016, when Defendant received actual notice of the '659

Patent from ZiiLabs.  (*See* Exhibit 3[3].)

71.     Despite Defendant's knowledge of the '659 Patent and ZiiLabs's allegations,

Defendant has knowingly and actively induced others to infringe the '659 Patent by acts

including, but not limited to, selling the Accused Products, marketing the infringing capabilities

of the Accused Products, and providing instructions, or making available, technical support,

and/or other encouragement for the use of such products.  (*See, e.g.,* Exhibits 4-9.)  For example,

the GeForce GTX User Guides specify the minimum system requirements for the host system in

which the GeForce GTX graphics cards were designed to be incorporated, and they provide

installation instruction to the user.  (*See, e.g.,* Exhibit 6 at 2 and 4-9; *see also* Exhibit 5.)

Similarly, the Nvidia Shield User Guide instructs a user on how to setup and use the device.

(*See, e.g.,* Exhibit 8.)  The Accused Products are pre-programmed to function in the manner

---

[3] ZiiLabs provided Nvidia an updated list of patents including the '659 Patent in November 2016.

claimed in the '659 Patent.  On information and belief, at least one customer has directly

infringed one or more claims of the '659 Patent.

72.     Defendant has provided and continues to provide the Accused Products, which

cannot and do not operate except in a manner that infringes the '659 Patent.  As shown in the

representative claim chart (Exhibit 15), the Accused Products function in a manner that infringes

or enables infringement of one of more claims of the '659 Patent.  At least by providing

customers with Accused Products, with the intent that the customer will use the Accused

Products in an infringing manner, Defendant has induced and is actively inducing infringement

of at least one claim of the '659 Patent.

73.     Further, upon information and belief, Defendant also indirectly infringes and/or

has indirectly infringed at least one of the claims of the '659 Patent by contributing to

infringement.

74.     The Accused Products are made solely for the purpose of operating in a manner

that infringes at least one claim of the '659 Patent.  Further, the Accused Products are

specifically made and/or specifically adapted for use in the infringement of the '659 Patent, are

not staple commodities of commerce, and are not suitable for substantial non-infringing use.  By

providing these Accused Products, Defendant has contributed to the infringement of the '659

Patent by end-users – for example, customers – who use the Accused Products.

75.     Further, Defendant's infringement of the '659 Patent is willful.  Defendant had

knowledge of the '659 Patent at least as of November 2016.  Despite actual notice for over one

year, Defendant was objectively reckless, and acted despite an objectively high likelihood that its

actions constituted infringement of the valid '659 Patent, in continuing to make, use, sell, offer

for sale, and import its Accused Products.

76.     As a result of Defendant's infringing conduct, ZiiLabs has suffered damages and will continue to suffer damages in an amount that, by law, cannot be less than a reasonable royalty, together with interest and costs as fixed by the Court under 35 U.S.C. § 284.

77.     The acts of infringement by Defendant have been deliberate and willful, and have damaged ZiiLabs, and Ziilabs is entitled to increased damages under 35 U.S.C. § 284 and to attorney fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## PRAYER FOR RELIEF

Wherefore, ZiiLabs requests the following relief:

A.     Judgment that Defendant directly infringes one or more claims of the '355, '800, '156, and '659 Patents literally and/or under the doctrine of equivalents;

B.     Judgment that Defendant indirectly infringes one or more of the claims of the '355, '800, '156, and '659 Patents literally and/or under the doctrine of equivalents;

C.     Judgment that Defendant willfully infringes one or more claims of the '355, '800, '156, and '659 Patents;

D.     Judgment that Defendant be held liable and ordered to account for and pay to ZiiLabs:

   1.     Damages adequate to compensate ZiiLabs for Defendant's infringement of the '355, '800, '156, and '659 Patents, in an amount no less than a reasonable royalty, pursuant to 35 U.S.C. § 284;

   2.     Trebled damages on account of Defendant's willful infringement of the '355, '800, '156, and '659 Patents pursuant to 35 U.S.C. § 284;

   3.     ZiiLabs's pre-judgment and post-judgment interest and costs pursuant to 35 U.S.C. § 284; and

   4.     ZiiLabs's reasonable attorneys' fees under 35 U.S.C. § 285;

E.     Judgment and an Order permanently enjoining Nvidia, its officers, agents, employees, and those acting in privity with them, from further direct and/or indirect infringement of the '355, '800, '156, and '659 Patents; and

F.     Judgment that ZiiLabs be granted such other and further relief as the Court may deem just and proper under the circumstances.

## JURY TRIAL DEMANDED

ZiiLabs hereby requests a trial by jury pursuant to Rule 38 of the Federal Rules of Civil

Procedure.


Dated: December 27, 2017

OF COUNSEL:

William D. Belanger*
Frank D. Liu*
Suparna Datta*
Ryan C. Deck*
Brittanee Friedman*
PEPPER HAMILTON LLP
19th Floor, High Street Tower
125 High Street
Boston, MA 02110-2736
(617) 204-5100

Tuhin Ganguly*
David J. Shaw*
PEPPER HAMILTON LLP
600 14th Street NW
Washington, DC 20005
(202) 220-1200

Gregory S. Bishop*
PEPPER HAMILTON LLP
333 Twin Dolphin Drive, Suite 400
Redwood City, CA 94065-1434
(650) 802-3600

*To seek admission *pro hac vice*

Respectfully Submitted,

*/s/ James H. S. Levine*

Douglas D. Herrmann (DE Bar No. 4872)
James H.S. Levine (DE Bar No. 5355)
PEPPER HAMILTON LLP
Hercules Plaza, Suite 5100
1313 Market Street
Wilmington, Delaware 19801
(302) 777-6500
Email: herrmand@pepperlaw.com
          levinejh@pepperlaw.com

***Attorneys for Plaintiff ZiiLabs Inc., Ltd.***